UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAWN MARIE HUNTINGTON,

                  Plaintiff,        Civil Action No. 18-11873

                                        Honorable George Caram Steeh

v.                                  Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

                  Defendant.

_____/

## <u>REPORT AND RECOMMENDATION</u><br><u>ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [11, 13]</u>

Plaintiff Shawn Marie Huntington ("Huntington") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #11, #13), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.    RECOMMENDATION

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Huntington is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment (**Doc. #13**) be **DENIED**,

Huntington's Motion for Summary Judgment (**Doc. #11**) be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** to the ALJ for further proceedings consistent with this Recommendation.

## II.   REPORT

### A.   Background

Huntington was 45 years old at the time of her alleged onset date of June 9, 2015, and at 5'4" tall weighed approximately 125 pounds during the relevant time period.  (Tr. 159, 176).  She completed high school but had no college education. (Tr. 177).  She worked consistently, first as a personal trainer and then as a shift manager at a grocery store, before she suffered a back injury at work in June of 2015. (Tr. 28-29, 38, 177, 191).  She now alleges disability primarily as a result of ongoing back pain, as well as depression and bipolar disorder.  (Tr. 38, 176).

After Huntington's application for DIB was denied at the initial level on May 16, 2017 (Tr. 70-77), she timely requested an administrative hearing, which was held before ALJ Crystal White-Simmons on December 11, 2017 (Tr. 24-52).  Huntington, who was represented by attorney Charles Palmer, testified at the hearing, as did vocational expert ("VE") Zachary Matthews.  (*Id.*).  On January 29, 2018, the ALJ issued a written decision finding that Huntington is not disabled under the Act.  (Tr.

10-20).   On April 17, 2018, the Appeals Council denied review.   (Tr. 1-5).
Huntington timely filed for judicial review of the final decision on June 12, 2018.
(Doc. #1).

The Court has thoroughly reviewed the transcript in this matter, including
Huntington's medical record, Function and Disability Reports, and testimony as to
her conditions and resulting limitations.  Instead of summarizing that information
here, the Court will make references and provide citations to the transcript as
necessary in its discussion of the parties' arguments.

### B.     The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB are available only for those who have a "disability."  *See
Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability"
as the "inability to engage in any substantial gainful activity by reason of any
medically determinable physical or mental impairment which can be expected to
result in death or which has lasted or can be expected to last for a continuous period
of not less than 12 months."   42 U.S.C. § 423(d)(1)(A).   The Commissioner's
regulations provide that a disability is to be determined through the application of a
five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial
> gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or
> combination of impairments that "significantly limits . . .

3

physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps ….  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this sequential analysis, the ALJ found that Huntington is not disabled under the Act.  At Step One, the ALJ found that Huntington has not engaged in substantial gainful activity since June 9, 2015 (the alleged onset date).  (Tr. 12). At Step Two, the ALJ found that she has the severe impairments of sacroiliitis, post traumatic chronic pain syndrome, bipolar disorder, and anxiety.  (*Id.*).  At Step Three, the ALJ found that Huntington's impairments, whether considered alone or

4

in combination, do not meet or medically equal a listed impairment.  (Tr. 13).

The ALJ then assessed Huntington's residual functional capacity ("RFC"), concluding that she is capable of performing light work, with the following additional limitations:   no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; occasional balancing, stooping, kneeling, crouching, and crawling; limited to simple and routine tasks; only occasional decision-making and occasional changes in the work setting; no interaction with the public; and must have the ability to alternate between sitting and standing after 30 minutes.  (Tr. 14).

At Step Four, the ALJ found that Huntington is not capable of performing any of her past relevant work.  (Tr. 17).  At Step Five, the ALJ determined, based in part on the VE's testimony in response to hypothetical questions, that Huntington is capable of performing the jobs of office clerk (158,000 jobs nationally), record clerk (42,000 jobs), and office helper (116,000 jobs).  (Tr. 18-19).  As a result, the ALJ concluded that Huntington is not disabled under the Act.  (Tr. 19).

### C.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the

record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole.  *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  If the ALJ's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court

6

would decide the matter differently and even if substantial evidence also supports

the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284,

286 (6th Cir. 1994) (internal citations omitted).

### D.    Analysis

In her motion, Huntington argues that the ALJ erred in discounting the

October 19, 2017 opinion of her treating physician, Craig Peppler, D.O, regarding

her back impairment.[1]  (Doc. #11 at 16-19).  Specifically, Dr. Peppler opined that,

as a result of her June 2015 back injury, Huntington suffers from post-traumatic

chronic pain syndrome, sacroiliac (SI) joint-mediated pain, and intractable lower

back pain.  (Tr. 424).  He further opined as follows, in relevant part:

> I feel that she requires work restrictions permanently.  She is to
> work no more than 3 days per week, with shifts of 3 hours or less;
> she is not [to] have any back-to-back shifts, and she should not
> lift anything greater than 10 to 15 pounds.

(Tr. 423).  The ALJ considered this opinion, saying only:

> The undersigned gives this [opinion] little weight because it is
> not consistent with the medical evidence of record.  The claimant
> is limited to light work with additional limitations but as
> explained above she has seen improvements with physical
> therapy.

---

[1] Huntington also argues that the ALJ erred in considering her mental impairments – specifically, in evaluating the opinion of the consultative psychological examiner, Hugh Bray, Ph.D.  (Doc. #11 at 19-21).  Because the Court is recommending remand as to the ALJ's evaluation of Dr. Peppler's opinion, it will focus its discussion on evidence pertaining to Huntington's back impairment.  On remand, however, the ALJ should consider the full record in evaluating Huntington's ability – as a result of both her physical and mental impairments – to function in the workplace on an ongoing, full-time basis.

(Tr. 17).

Huntington now argues that the ALJ erred in failing to give good reasons, supported by substantial evidence, for discounting Dr. Peppler's opinion. Indeed, the treating physician rule "mandate[s] that the ALJ 'will' give a treating source's opinion controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(c)(2)[2]). "If the ALJ declines to give a treating source's opinion controlling weight, [the ALJ] must then balance the following factors to determine what weight to give it: 'the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)); *see, e.g.*, *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010) ("Even when inconsistent with other evidence, a treating source's medical opinions remain entitled to deference and must be weighed using the factors provided in 20 C.F.R. §§ 404.1527 and 416.927."). "Importantly, the Commissioner imposes on its decision makers a clear

---

[2] Although this regulation has been superseded by 20 C.F.R. § 404.1520c, it remains in effect for claims – like Huntington's – filed before March 27, 2017.  *See* 20 C.F.R. § 404.1520c.

duty to 'always give good reasons in [the] notice of determination or decision for the weight [given to a] treating source's opinion.'"  *Cole*, 661 F.3d at 937 (quoting 20 C.F.R. § 404.1527(c)(2)).  Those reasons "must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"  *Id.* (quoting *Soc. Sec. Rul. ("SSR") 96-2p*, 1996 WL 374188, at *5 (July 2, 1996)).

As set forth above, the ALJ discounted Dr. Peppler's opinion because it was "not consistent with the medical evidence of record" – and, arguably more specifically, because Huntington had "seen improvements with physical therapy." (Tr. 17).  There are several problems with this analysis, however.  To begin with, courts have recognized that unsupported, conclusory statements that medical opinions are inconsistent with the evidence of record fall short of satisfying the treating physician rule's "good reasons" requirement.  *See, e.g., Guyaux v. Comm'r of Soc. Sec.*, No. 13-12076, 2014 WL 4197353, at *16 (E.D. Mich. Aug. 22, 2014) (ALJ's rejection of treating physician opinion "based on the bare statement that it is conclusory and not supported by the medical evidence" was insufficient, warranting remand); *Castro v. Comm'r of Soc. Sec.*, No. 12-12822, 2013 WL 4012824, at *10 (E.D. Mich. Aug. 6, 2013) (ALJ's "one-sentence reason for rejecting the [treating physician's] assessment, i.e., that 'it is not consistent with the treatment records or

9

the record as a whole,' is insufficient"). Indeed, this Court remanded a case to the ALJ fairly recently on nearly identical facts, recognizing that the ALJ failed to articulate good reasons, supported by substantial evidence, for rejecting the treating physician's opinion. *See Rines v. Comm'r of Soc. Sec.*, No. 16-13887, 2017 WL 4786144, at *3-5 (E.D. Mich. Oct. 24, 2017). In *Rines*, the Court explained:

> The dismissal of [treating physician] Dr. Price's opinions falls far short of the required "specific" explanation for discounting a treating source's opinions. The ALJ's statement that Dr. Price's opinions "are not consistent with or supported by the record as a whole" is unhelpful boilerplate that sheds no light on precisely which portions of the record undermine Dr. Price's opinions. Nor does the ALJ explain *how* or *why* the record is incompatible with Dr. Price's opinions. Indeed, the ALJ's general statement that the record, *as a whole*, warrants rejection of Dr. Price's opinions is the *opposite* of the specific explanation required when an ALJ provides a treating physician's opinion less than controlling weight. Because the ALJ offered no meaningful discussion or analysis of Dr. Price's opinions, the Court is unable to provide a "meaningful review" of the ALJ's decision to reject those opinions.

*Id.* at *3 (emphasis in original) (internal citations omitted). Here too, then, the ALJ's statement that Dr. Peppler's opinion is "not consistent with the medical evidence of record" (Tr. 17) is "unhelpful boilerplate that sheds no light on precisely which portions of the record undermine [his] opinions." *Rines*, 2017 WL 4786144, at *3.

Moreover, to the extent the ALJ discounted Dr. Peppler's opinion because Huntington saw "improvements with physical therapy" and because it was "not consistent with the medical evidence of record" (Tr. 17), such reasons are not

10

supported by substantial evidence.  As set forth above, Huntington injured her back at work on June 9, 2015, while attempting to pull a large rack of 80 gallon-cartons of milk into a refrigerated unit.  A June 29, 2015 MRI showed a broad disc protrusion and facet arthropathy at L4-L5, with abutment of the L5 nerve roots within the lateral recesses and effacement of the right L4 root within the root foramen; disc desiccation at L5-S1; and foraminal stenosis with L5 root abutment.  (Tr. 211-12).  Huntington then underwent physical therapy – attending nineteen visits between July 10, 2015, and August 25, 2015.  (Tr. 213-66).  By the end of this course of physical therapy, Huntington's back pain had improved somewhat and, although she continued to report soreness in her low back and tightness in her hips, she was "looking forward to returning to work."  (Tr. 217).  Thus, the ALJ's observation that Huntington saw "improvements with physical therapy" might be correct as to this brief two-month period.

However, Huntington's condition appears to have deteriorated significantly over the next two years.  Huntington returned to work part-time, but with no lifting restrictions, in September of 2015.  (Tr. 400).  At a November 18, 2015 independent medical evaluation ("IME") with Steve Geiringer, M.D., in connection with her worker's compensation claim, it was noted that after she returned to work on even a part-time basis, "her symptoms returned and eventually she was back to square one." (*Id.*).  On physical examination, she had limited range of motion in the lumbar spine;

11

there was tenderness in several areas; and provocative maneuvers for the SI joint were painful.  (*Id.*).  Nevertheless, Dr. Geiringer opined that Huntington suffered from only a lumbar strain with abnormal mechanics, and he recommended she remain off work while she completed an additional course of physical therapy.  (Tr. 400-01).

Huntington then dutifully attended twenty-four more physical therapy sessions between November 2015 and February 2016.  (Tr. 287).  By the time she was discharged from her second course of physical therapy, Huntington still reported "great difficulty" lifting twenty pounds; she had pain with flexion, extension, and rotation; her straight-leg raise testing was painful bilaterally; and her then-treating physician, Anne Abrahamson, M.D., opined that she should remain off work.  (Tr. 363-67).  At a follow-up visit to Dr. Abrahamson's office on April 20, 2016, Huntington expressed a desire to resume her full work duties, but indicated that even doing housework and lifting twenty pounds resulted in increased pain.  (Tr. 368).

On September 6, 2016, Huntington underwent a second IME with Dr. Geiringer.  (Tr. 395-97).  At that time, she reported continued pain in her low back, radiating down both thighs to the knees, worse with physical activity.  (Tr. 396).  On examination, Dr. Geiringer again noted "objective signs of abnormal mechanics from the lumbar spine, which again themselves arise from asymmetric lumbar muscle tightness."  (*Id.*).  He further indicated that his prior recommendation still

12

applied – *i.e.*, that Huntington undergo "manual physical therapy" – and he continued to characterize her condition as a "simple, uncomplicated back strain." (Tr. 396-97).  Dr. Geiringer opined that, while she underwent additional physical therapy, Huntington could work with a 10-pound lifting restriction, so long as bending, stooping, and twisting from the waist was limited.  (Tr. 397).

Huntington then began treating with Dr. Peppler at Spine, Sports & Occupational Medicine on October 27, 2016.  (Tr. 448-51).  She reported "rather intense pain" in the mid-buttocks region, worse on the right, which occasionally radiated down the posterior aspect of her leg, often giving her a feeling of pelvic pressure.  (Tr. 449).  Dr. Peppler disagreed with Dr. Geiringer's opinion that Huntington had merely suffered a lumbar strain, saying:  "A lumbar strain injury, typically, would have healed weeks to months prior to his independent medical examination …; therefore, I do not feel that a lumbar strain injury should have been entertained at all."  (*Id.*).  After reviewing Huntington's June 2015 MRI and conducting a physical examination, Dr. Peppler's impression was chronic pain syndrome and low back and buttocks pain, and he wanted to rule out SI joint syndrome.  (Tr. 450).  He prescribed oral steroids and discussed the possibility of a fluoroscopically guided SI joint injection, which could help identify the generator of Huntington's pain.  (*Id.*).  Dr. Peppler further indicated that Huntington could return to work with the following restrictions:  no lifting, pushing, or pulling greater than

15 pounds; must be allowed to change position as necessary for her pain; and no prolonged bending or twisting at the waist. (Tr. 451).

At a follow-up visit to Dr. Peppler on December 1, 2016, Huntington reported that she had been able to return to work with these restrictions on a very limited basis; she was working only three-hour shifts and could not fully recover within 24 hours. (Tr. 437). Dr. Peppler recommended an SI joint injection to determine whether she suffered from SI joint mediated pain; he reiterated his request that the insurance company authorize such injections on January 12, 2017. (Tr. 438, 461-62). That same day, Dr. Peppler issued a disability certificate indicating that Huntington could work three-hour shifts but should avoid back-to-back days of work. (Tr. 445). These restrictions were renewed after examinations on April 1 and May 18, 2017. (Tr. 442-43).

On April 27, 2017, Huntington underwent a consultative physical examination with Bina Shaw, M.D. (Tr. 414-21). Dr. Shaw noted that Huntington had received the SI joint injection from Dr. Peppler just the day before and therefore had no significant severe current pain. (Tr. 415). Dr. Shaw's impression was a history of a work-related injury with lumbar strain and symptomatic SI joint pain, improved with SI joint injections. (Tr. 417). She suggested that Huntington avoid frequent bending, twisting, and lifting of more than 20 pounds, and further stated that Huntington could slowly increase her hours – from nine per week to twenty per week

14

– over a period of three to six months.  (*Id.*).

On June 1, 2017, Dr. Peppler wrote a letter in response to Dr. Geiringer's opinion that Huntington's problems were all strain-related and that she should continue with physical therapy. (Tr. 455-57).  In relevant part, Dr. Peppler stated:

> At any rate, I believe that Ms. Huntington's pain is real, it is debilitating, and it deserves treatment, and **physical therapy has been tried for at least one year on a fairly continuous basis with no improvement whatsoever.**  The [SI] injection did provide improvement of several weeks duration by the time I had seen her in follow up, and as far as I know she is still improved, which I feel is a very good prognostic sign.
>
> Therefore, it is my opinion that Dr. Geringer is wrong.  Ms. Huntington's symptoms are not those of a lumbar strain injury. Lumbar strain injuries, generally, will heel [sic] within a month to two months, and I have never run across a "persistent" lumbar sprain that will last for at least two years in duration.  Therefore, I do not feel that that is the appropriate diagnosis in this case. The appropriate diagnosis is sacroiliac joint syndrome based upon the results of the fluoroscopically guided diagnostic and, in this case, therapeutic injection.

(Tr. 456-57 (emphasis added)).

Huntington returned to see Dr. Peppler on July 13, 2017, at which time he indicated that the results of the SI injection confirmed the diagnosis of post-traumatic sacroiliitis, which he described as "a very difficult, frustrating condition for both the patient and the physician."  (Tr. 427).  At that point, Dr. Peppler opined that Huntington had reached maximum medical improvement and would be unlikely to significantly improve.  (*Id.*).  He further indicated that Huntington was working with

restrictions of no more than three shifts per week; no more than three hours in duration; and no back-to-back shifts. (*Id.*). According to Dr. Peppler, Huntington "will require these restrictions on a permanent basis." (*Id.*). On October 19, 2017, Huntington returned to see Dr. Peppler with a nurse case manager who wanted "to clarify her status with regards to maximum medical improvement and permanent work restrictions." (Tr. 423). At that time, Dr. Peppler reiterated his position, saying:

> **THIS PATIENT HAS REACHED MAXIMUM MEDICAL IMPROVEMENT, AND I FEEL THAT STAGE WAS ACHIEVED AT THE JULY 13, 2017 OFFICE VISIT WHEN I FIRST STATED IT.** I feel that she requires work restrictions permanently. She is to work no more than 3 days per week, with shifts of 3 hours or less; she is not [to] have any back-to-back shifts, and she should not lift anything greater than 10 to 15 pounds.

(*Id.*) (emphasis in original).

As set forth above, given all of this medical evidence, the reasons articulated by the ALJ for discounting this treating physician opinion are simply not borne out in the record. Specifically, the ALJ discounted Dr. Peppler's opinion because Huntington had "seen improvements with physical therapy" and because it was "not consistent with the medical evidence of record." (Tr. 17). In reality, however, although Huntington's back pain improved somewhat after her first round of physical therapy – which ended in August of 2015 – the record indicates that her pain worsened significantly when she attempted to return to work after that time, a

16

fact that the ALJ ignored.  Huntington then treated with Dr. Peppler, a specialist, for more than one year.  Both of these facts lend credence to his October 2017 opinion. *See* 20 C.F.R. § 404.1527(c)(1) and (5) (length of the treatment relationship and specialization of the treating source are relevant factors to consider in weighing treating physician's opinion).  And, the ALJ failed to mention Dr. Peppler's finding that, in the end, the many physical therapy appointments Huntington attended resulted in "no improvement whatsoever."  (Tr. 456).  Moreover, Dr. Peppler's opinion that Huntington cannot perform full-time work would seem to square with the opinion of the consultative examiner, Dr. Shaw, who opined in April 2017 that – with continued improvement – she might still only be capable of working twenty hours per week by October 2017.  (Tr. 417).

While the ALJ did, earlier in her decision, mention some medical records that reflected normal findings (Tr. 16), she failed to meaningfully weigh that evidence against the significant evidence discussed above, and instead, simply rejected Dr. Peppler's opinion because it "is not consistent with the medical evidence of record" and because she found that Huntington improved with physical therapy.  (Tr. 17). Again, based on the foregoing, the Court simply cannot find that substantial evidence supports either of these aspects of the ALJ's decision to discount Dr. Peppler's opinion, and remand is required.  *See Minor v. Comm'r of Soc. Sec.*, 2013 WL 264348, at *17 (6th Cir. Jan. 24, 2013) (ALJ does not fairly discharge his duties

when he fails to discuss significant contradictory portions of the medical records); *Roberts v. Colvin*, 2015 WL 181658, at *10 (E.D. Mich. Jan. 14, 2015) (noting that while ALJ need not discuss all record evidence, "the quality and volume of evidence not discussed by the ALJ may 'raise[] serious doubts about the supportability of the ALJ's RFC finding' and overall conclusions") (quoting *Wilcox v. Comm'r of Soc. Sec.*, 2014 WL 4109921, at *7 (E.D. Mich. Aug.19, 2014)).

## III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #13**) be **DENIED**, Huntington's Motion for Summary Judgment (**Doc. #11**) be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** to the ALJ for further proceedings consistent with this Recommendation.

Dated: March 4, 2019                           s/David R. Grand
Ann Arbor, Michigan                       DAVID R. GRAND
                                                       United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2).

Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 4, 2019.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
